___



SO ORDERED,

**Judge Katharine Samson**
**United States Bankruptcy Judge**
**Date Signed: January 2, 2014**

The Order of the Court is set forth below. The docket reflects the date entered.

___

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: ADVIAL YOVON MCKENZIE AND DORA DELORIS MCKENZIE | CASE NO. 13-05011 |
| DEBTORS | CHAPTER 7 |
| BRIAN DACE AND MINNIE DACE | PLAINTIFFS |
| V. | ADV. NO. 13-05011-KMS |
| ADVIAL YOVON MCKENZIE AND DORA DELORIS MCKENZIE | DEFENDANTS |

## MEMORANDUM OPINION

This matter came before the Court for trial on December 10, 2013, (the "Trial") on the Complaint Objecting to Dischargeability of a Debt (Adv. Dkt. No. 1), filed by creditor-plaintiffs Brian and Minnie Dace ("the Daces"), and the Answer to Complaint (Adv. Dkt. No. 3), filed by debtor-defendants Advial Yovon McKenzie and Dora Deloris McKenzie ("the McKenzies"). At Trial, Eric Tiebauer represented the Daces and Tylvester Goss represented the McKenzies. By stipulation, the parties introduced thirty-seven exhibits.[1] These exhibits and the testimony were the only evidence presented at trial. At the close of Plaintiffs' case, the McKenzies made an ore

---

[1] The Daces introduced twenty-seven exhibits and the McKenzies introduced ten. (Adv. Dkt. No. 24, 8–9).

tenus motion for directed verdict. The Court granted the motion with respect to Dora McKenzie and took the motion under advisement with respect to Advial McKenzie, but allowed him to respond to Plaintiffs' case. (Dec. 10, 2013 Rec., at 10:53am). The Court, having considered the evidence, finds that the obligation is dischargeable for the reasons set forth below.[2]

## I. JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(A), (B), (I), and (O).

## II. FINDINGS OF FACT

The Daces entered into an agreement with Advial McKenzie for the construction of their home, which began in June 2010. (Adv. Dkt. No. 24, 4 ¶11). The agreement provided that the home would be constructed for $176,995, but in an attached addendum the parties agreed to a three to four thousand dollar budget increase due to an increase in the cost of materials. (Adv. Dkt. No. 30, Exh. P-1). Thus, the final bid was between $179,995 and $180,995. The Daces obtained a construction loan based on the bid and assert that the McKenzies received payments totaling approximately $171,000 towards the construction of the home. (Adv. Dkt. No. 1, at 2 ¶9). But before construction was completed, a dispute arose between the Daces and Advial McKenzie when McKenzie realized there were not sufficient funds to complete the project.[3] Construction ceased in November 2010 and was never completed. (Adv. Dkt. No. 24, 4 ¶11). Subsequently, the Daces filed suit against the McKenzies in Chancery Court on March 14, 2011.

---

[2] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

[3] In a letter to the Daces' attorney, McKenzie stated that he "now realize[s] . . .that [he] did not bid enough in the beginning," and he estimated it would cost an additional $42,000 to complete construction. (Adv. Dkt. No. 30, Exh. P-7).

(*Id. See also* Dkt. No. 30, Exh. P-8). The McKenzies filed for relief under Chapter 7 of the bankruptcy code on November 19, 2012. (*Id.*). They received a discharge on March 6, 2013. (*Id.*). In their schedules, the McKenzies listed the Daces as having an unsecured, non-priority claim. (Dkt. No 3, at 12). The claim is listed as disputed and no dollar amount is given under the amount of the claim. (*Id.*).

The Daces timely filed this adversary proceeding objecting to the dischargeability of the debt they claim the McKenzies owe them on February 15, 2013. (Adv. Dkt. No. 24, 4 ¶11). Though no exact figure is given by the Daces in either their complaint, (Adv. Dkt. No. 1), or their suit in Chancery Court, (Adv. Dkt. No. 30, Exh. P-8), they testified at trial that it would cost approximately $60,000 to complete construction on their home and this number is also reflected in the pre-trial order.[4]

### III. CONCLUSIONS OF LAW

**A. Dora McKenzie**

As noted above, the Court granted the McKenzies' ore tenus motion for directed verdict with respect to Dora McKenzie and dismissed her as a defendant at the close of Plaintiff's case. After the motion was granted, Dora McKenzie moved for reasonable costs and attorney's fees pursuant to 11 U.S.C. § 523(d). The Court took the motion under advisement.

---

[4] (Dkt. No. 24, 3 ¶7(C)).The Court notes that no expert testimony was presented at trial to clarify the cost of the work needed to complete construction on the home. Further, in a letter to Curtis Bates, the attorney handling the civil suit the Daces filed against the McKenzies, Advial McKenzie enclosed an itemized list of the remaining work needed to complete construction, which he estimated would cost $42,243.18 to complete. (Dkt. No. 30, Exh. P-7, at 3). Finally, the Daces included a punch list of expenses for the house they paid for after Advial McKenzie ceased construction, which totals $45,199.90, (Dkt. No. 30. Exh. P-11, at 4), but the testimony at trial revealed that there was still money left from the construction loan and it is unclear whether the Daces used those funds to pay for some or all of the items in their punch list.

Section 523(d) provides that "the court shall grant judgment in favor of the debtor for the cost of, and a reasonable attorney fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, [unless] special circumstances would make the award unjust." 11 U.S.C. § 523(d). "The purpose of this provision is to discourage creditors from bringing objectively weak nondischargeability actions in hopes of inducing a settlement from a debtor anxious to avoid paying attorney's fees to defend the action." *In re Tillman*, No. 12-00031, 2012 WL 5993712, at *5 (Bankr. S.D. Miss. November 30, 2012) (internal citations omitted). An award of costs and fees under § 523(d) is within the court's sound discretion. *Id.* (citing *Eric D. Fein, P.C. & Associates v. Young* (*In re Young*), No. 09-4054, 2010 WL 795113, at *2 (Bankr. E.D. Tex. Mar. 8, 2010)).

Plaintiffs failed to establish the elements of either § 523(a)(2)(A) or § 523(a)(6) with respect to Dora McKenzie. They did not show that Dora McKenzie made any false representations to them. In fact, the only representation they allege she made was that Advial Mckenzie would complete the construction of the house if they purchased the remaining materials needed to do so; a fact the testimony at trial revealed as undisputedly true. Further, the Daces failed to show that Dora McKenzie took any willful or malicious action against them that resulted in injury. In fact, the Daces testified that Dora McKenzie attempted to negotiate with them on Advial Mckenzie's behalf to resolve the dispute amicably. And aside from her attempt to resolve the conflict and one visit to the property after Advial McKenzie ceased construction, the Daces failed to show that Dora McKenzie was involved in the construction or dispute in any way. Accordingly, the Court finds that the Daces position was not substantially justified with respect to Dora McKenzie. Further, no special circumstances exist that would render an award of costs and fees unjust. Thus, Dora McKenzie's request for reasonable costs and attorney's fees for the

proceeding is granted. The remainder of the Court's analysis concerns Plaintiffs' case against Advial McKenzie.

**B. Burden of Proof**

A debtor is generally granted a discharge of all prepetition debts in a Chapter 7 bankruptcy case, with the exception of certain debts described in § 523(a). *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 674 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 845 (2013). The Fifth Circuit has stated that "[e]xceptions to discharge should be construed in favor of debtors in accordance with the principle that provisions dealing with this subject are remedial in nature and are designed to give a fresh start to debtors unhampered by pre-existing financial burdens." *In re Davis*, 194 F.3d at 573. In a proceeding under § 523, the party seeking a determination of non-dischargeability bears the burden of proof by a preponderance of the evidence.[5] *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991); FED. R. BANKR. P. 4005. Requiring the party objecting to the dischargeability of a debt to "carry the burden of proof comports with the policy behind federal bankruptcy law which favors discharge in an effort to provide the debtor with a fresh start." *Rustin v. Rustin (In re Rustin)*, No. 04-50890-NPO, 2011 WL 5443067, at *7 (Bankr. S.D. Miss. Nov. 9, 2011) (*citing* 4 COLLIER ON BANKRUPTCY ¶ 523.05 (16th ed. 2010)). Plaintiffs seek to have the debt they claim is owed to them declared non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A)[6] and 523(a)(6). Therefore, Plaintiffs bear the burden of proving each of the required elements of § 523(a)(2)(A), § 523(a)(6), or both, by a preponderance of the evidence.

---

[5] "A fact is proven by a preponderance of the evidence if the Court finds it more likely than not the fact is true." *Lanier v. Futch (In re Futch)*, No. 09-00144-NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011) (*citing EPA v. Sequa Corp. (In re Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 909–10 (5th Cir. 1993)).

[6] Plaintiffs do not specify § 523(a)(2)(A), instead stating the claim is nondischargeable under "§ 523(a)(2)." (Adv. Dkt. No. 1, at 1). But the pre-trial order specifies that the damages claimed were caused by "false pretense, false representation, or actual fraud [under] 11 U.S.C. § 523(a)(2)." (Dkt. No. 24, at 3 ¶7(C)). Thus, the Court only considers Plaintiffs claims under § 523(a)(2)(A) and § 523(a)(6).

**C. 11 U.S.C. § 523(a)(2)(A)**

Section 523(a)(2)(A) excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). "Section 523(a)(2)(A) encompasses three similar grounds for non-dischargeability, all of which apply to 'debts obtained by frauds involving moral turpitude or intentional wrong.'" *In re Futch*, 2011 WL 576071, at *17 (*citing First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 813 (5th Cir. 1992)).

The Fifth Circuit has recognized a distinction between the elements of proof required for false pretenses or false representation and those required for actual fraud. *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001). This distinction "appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact." *ETRG Inv., LLC v. Hardee (In re Hardee)*, No. 11-60242, 2013 WL 1084494, at *12 (Bankr. E.D. Tex. Mar. 14, 2013) (*citing Bank of La. v. Bercier (In re Bercier),* 934 F.2d 689, 692 (5th Cir.1991) ("[A debtor's] promise ... related to [a] future action [that does] not purport to depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense")). In contrast, a party objecting to discharge of a debt under § 523(a)(2)(A) for *actual fraud* must demonstrate that: (1) the debtor made representations; (2) the debtor knew the representations were false at the time they were made; (3) the representations were made with the intention and purpose to deceive the creditor; (4) the creditor actually and justifiably relied on the representations; and (5) the creditor sustained a loss as a proximate result of its reliance. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

The Daces allege that Advial McKenzie made a false representation with regard to a future event: completion of the house for his bid price. Thus, the alleged misrepresentation cannot be defined as a false representation or a false pretense and the Daces must establish all of the elements for actual fraud under § 523(a)(2)(A). At trial, the Daces failed to establish the second and third elements of actual fraud: that Advial McKenzie knew the representations were false *at the time they were made* and that they were made with the intention and purpose to deceive the creditor.

First, with respect to the second element, Advial McKenzie testified repeatedly at trial that he believed he could construct the home for his bid price when he made the bid. He revealed that he was related to Minnie Dace and that when the loan officer expressed concern over his bid price, he told him he could complete the home for that price because it was "for family." Indeed, the testimony established that at an October meeting with the Daces and the loan officer at the bank, the house was very near completion and McKenzie thought the project would be completed with money to spare. Moreover, the testimony revealed that McKenzie relied on the original blue prints for the house when he made his bid and several modifications to those blue prints were made during the course of construction. Finally, the Daces make much of a response letter McKenzie sent to their lawyer, where he states: "I *now* realize and admit that I did not bid enough in the beginning."(Dkt. No. 30, Exh. P-7) (emphasis added). But the letter was dated December 21, 2010, (*Id*), long after Mckenzie proposed his bid on the house. The Court finds that the Daces failed to establish that Advial McKenzie knew, *at the time he made the bid*, that he could not construct the home for the bid price. At best, they established that he knew on December 21, 2010 that he had underbid the project.

Second, with respect to the third element, the Daces failed to establish that Advial McKenzie underbid the project intentionally to deceive them. The testimony established that McKenzie believed he could complete the project for the bid price until sometime after the October meeting at the bank. Further, McKenzie specifically testified that he never intended to mislead the Daces when he bid on the construction costs for the house and the Daces failed adduce any evidence to rebut his testimony.

Accordingly, the Daces have failed to establish the elements of actual fraud under § 523(a)(2)(A) and must rely on § 523(a)(6) to succeed on their claim.

**D. 11 U.S.C. § 523(a)(6)**

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Accordingly, to render a pre-petition debt nondischargeable under § 523(a)(6), plaintiff must establish three elements: (1) the debtor caused an injury; (2) the injury was incurred by another (or the property of another); and (3) such injury was willful and malicious. *In re Phillips*, 2010 WL 509338 at *6. In *Kawaauuhau v. Geiger*, the Supreme Court held that the word "willful" in § 523(a)(6), "modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). And "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. The Fifth Circuit has held that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *In re Miller,* 156 F.3d 598, 606 (5th Cir. 1998).[7] Stated differently, "for willfulness and malice to prevent discharge under Section 523(a)(6), the debtor must have

---

[7] The *Miller* court specifically rejected the argument that a "malicious" act is one without just cause or excuse, opting instead to adopt the "implied malice standard," which defines a "malicious" act as one done with the "actual intent to cause injury." *Id.* at 605–06.

intended the actual injury that resulted . . . . Intent to injure may be established by showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury." *Texas v. Walker*, 142 F.3d 813, 823 (5th Cir.1998) (citing *In re Delaney*, 97 F.3d 800, 802 (5th Cir.1996)).

At trial, the Daces testified that they believed Advial McKenzie intended to harm them by under-bidding on the project and ceasing construction. They also testified that as a result of the cessation, they incurred losses totaling approximately $60,000. But they also testified that they instructed McKenzie to speak with their lawyer instead of them when they were discussing the need for additional funds to complete the project. Moreover, the Daces also testified that they refused to provide additional financing to complete the project, even when McKenzie offered to finish it if they would agree to purchase the materials needed to do so. And the testimony at trial revealed that there was still money left on the loan when McKenzie ceased construction. The Daces testified that they refused McKenzie's offer because they believed they had already paid him enough to complete the project. Further, in his response letter to the Daces' attorney acknowledging his bidding error, McKenzie included an itemized list of the funds spent on the house and an estimate for the cost for completion, itemized by project. Finally, McKenzie specifically testified at trial that he never intended to mislead or harm the Daces.

The Daces failed to adduce any evidence at trial indicating McKenzie intended to cause the resulting harm. At best, the Daces established that the injury incurred was the result of McKenzie's recklessness in attempting to construct the house for such a low price or his negligence in leaving the project. Recklessness or negligence, without more, cannot support a nondischargeability claim under § 523(a)(6). *Kawaauhau*, 523 U.S. at 64. Accordingly, the Court

finds that the Daces have failed to carry their burden with respect to the elements of § 523(a)(6) and the debt owed to them is therefore dischargeable.

### E. Attorney's Fees and Costs

The Court is not inclined to award attorney's fees and costs under § 523(d) with respect to Plaintiffs' case against Advial McKenzie. As discussed above, § 523(d) mandates an award of reasonable costs and attorney's fees "if the court finds that the position of the creditor was not substantially justified . . . ." 11 U.S.C § 523(d). The term "'[s]ubstantially justified' has been interpreted to require that the plaintiff-creditor had a reasonable basis both in fact and in law to bring and pursue its nondischargeability claim." *In re Young,* 425 B.R. 811, 819 (Bankr. E.D. Tex. 2010). The Daces could have succeeded on their claim had they been able to show at trial that Advial McKenzie acted willfully and maliciously or that he knowingly and intentionally underbid the project at the time they entered into the construction contract. Thus, though the Daces failed to satisfy the elements of either § 523(a)(2)(A) or § 523(a)(6), the Court finds that their position was substantially justified.

## IV. CONCLUSION

For the reasons stated above, the debt owed to the Daces by the McKenzies is dischargeable and Dora McKenzie's request for attorney's fees and costs is granted. Tylvester Goss shall file within 14 days a fee itemization for defending the adversary proceeding against Dora McKenzie so that the Court may enter a final judgment.

## END OF DOCUMENT ##